**Not for Publication**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| NICOLE FACCENDA, | |
| Petitioner, | Civil Action No. 16-1454 (ES) |
| v. | OPINION |
| UNITED STATES OF AMERICA, | |
| Respondent. | |

**SALAS, DISTRICT JUDGE**

Presently before the Court is the Motion to Vacate, Set Aside, or Correct a Sentence of Nicole Faccenda ("Petitioner") brought pursuant to 28 U.S.C. § 2255. (D.E. No. 1). In response to this Court's Order to Answer (D.E. No. 11), Respondent United States of America ("Respondent") filed its response in opposition (D.E. No. 27 ("Response")) and Petitioner filed a Reply (D.E. No. 29). For the following reasons, the Court denies the Petition, and declines to issue a certificate of appealability.

**I.     Background**

This Court briefly notes the following facts from which this case arises.[1]

Petitioner had been in a long-term relationship with H.M., with whom she has a son. (D.E. No. 1-1 at 19). In the summer of 2011, H.M. ended their partnership to pursue an ongoing relationship with another woman, J.S. (*Id*. at 20). Petitioner then reached out to H.M.'s nephew,

---

[1] "In considering a motion to vacate a defendant's sentence, 'the court must accept the truth of the movant's factual allegations unless they are clearly frivolous based on the existing record.'" *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005) (internal citations omitted).

S.L., to whom Petitioner subsequently proposed a murder-for-hire plot to kill J.S. (*Id*. at 23-24). Petitioner was unaware that S.L. was a government informant. (*Id*. at 24). S.L. brought in an undercover agent of the Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF") to pose as the hitman in Petitioner's murder-for-hire plot. (*Id*.). Petitioner's conversations with S.L. and the undercover ATF agent were contemporaneously recorded via audio and video ("the Recordings"). (*Id*. at 15).

On October 26, 2011, S.L. called Petitioner to tell her that the hitman had shot J.S. and made it look like a robbery. (*Id*. at 26). Shortly thereafter, Petitioner was arrested. (*Id*.).

In November 2011, Konstantin Mouhtis, Ph.D., evaluated Petitioner for bail purposes. (*Id*.).

After arraignment, Petitioner retained Peter R. Willis, Esq. ("Mr. Willis"), to represent her. (*Id*.). He was her defense attorney through the time of her notice of appeal of sentence. (*Id*.).

Mr. Willis retained mental health expert Jacob H. Jacoby, M.D., Ph.D. ("Dr. Jacoby"), to evaluate Petitioner's mental condition in an attempt to mitigate the sentence. In December 2011, Dr. Jacoby met with and evaluated Petitioner, and he issued two reports of his examination. (*Id*.; D.E. Nos. 2-3 & 2-4). Dr. Jacoby's December 2011 reports provided two diagnoses of Petitioner ("Jacoby Diagnoses") and concluded that Petitioner committed the offenses in a particular mental health state ("Jacoby Opinion"). (D.E. No. 1-1 at 26-27). Dr. Jacoby testified at Petitioner's December 21, 2011 bail hearing regarding the likelihood that she would be a danger to society if released (D.E. No. 3-8 at 27-29), including testimony regarding materials that he reviewed to render his opinions in Petitioner's case:

> Robert Frazer, Esquire (Attorney for the Government): So, Doctor, this conclusion that you've drawn regarding this particular defendant's danger to herself, to her children, and to the victim, and

> to the community, that was based on your six plus hours of interview with her on December 7th of this year, correct?
>
> Dr. Jacoby: And understanding of the nature of her condition before.
> Mr. Frazer: My question goes to what you relied on to make the statement to the Court. I just want to get the universe of material that you had at your disposal, which was the interview that you had with her, over six plus hours; the criminal complaint in this case; and I believe you mentioned some excerpts of video or audio tapes that you were shown.
>
> Dr. Jacoby: No, I was not shown any visual or auditory – auditory material, I was shown printed excerpts alluding to that.
>
> \*\*\*
>
> Mr. Frazer: What you're saying is, it wasn't the actual audio video, but perhaps transcripts of the audio video?
>
> Dr. Jacoby: Whatever was alluded to in these documents.
>
> Mr. Frazer: In that complaint?
>
> Dr. Jacoby: Correct.
>
> Mr. Frazer: And so you have not seen the actual audio or video of the -- what is described within that complaint?
>
> Dr. Jacoby: Correct.

(D.E. No. 3-8 at 32-34; D.E. No. 1-1 at 27-30).

On February 1, 2012, Dr. Jacoby prepared a third report as an update to his prior opinions, based on his review of three police reports, interviews of several of Petitioner's family members, and review of Petitioner's neuropsychological profile. (D.E. No. 2-5 at 1).

Petitioner signed a plea agreement on April 25, 2012, pleading guilty to a one-count Information charging her with using facilities of interstate commerce with the intent that a murder be committed in violation of Title 18, United States Code, Section 1958(a) and Section 2. (D.E. No. 3-9).

3

On August 8, 2012, Petitioner appeared before then-United States Magistrate Judge Patty Shwartz and pled guilty to a one-count information (D.E. No. 3-12) that charged her with knowingly using and causing another to use a facility of interstate commerce (a cellular telephone) with the intent that a murder be committed as consideration for the receipt of $10,000. (D.E. No. 21-1 at 1-2). This charge carried a 10-year maximum period of incarceration. The government exercised its discretion and capped Petitioner's total exposure at 10-years' imprisonment. (D.E. No. 27 at 11).

Dr. Jacoby again evaluated Petitioner in November 2012 and issued a fourth report. (D.E. No. 1-1 at 33; D.E. No. 2-6).

On February 8, 2013, the Court ordered that Petitioner be evaluated by the Bureau of Prisons before sentencing for the purpose of determining "whether the defendant presently or previously suffers and/or suffered from a mental disease or defect …." (D.E. No. 3-16). Christine Anthony, Ph.D., the forensic psychologist at FMC Carswell, evaluated Petitioner. Dr. Anthony issued a June 17, 2013 report in which she opined that Petitioner suffered from certain mental health symptoms ("Anthony Opinion") and disagreed with the Jacoby Opinion. (D.E. No. 2-7).

On October 10, 2013, Dr. Jacoby issued a fifth report, this one commenting on Dr. Anthony's report. (D.E. No. 2-8).

At the December 4, 2013 sentencing (D.E. No. 27 at 13; D.E. No. 4-7), the Court, having been provided with at least two Dr. Jacoby reports, the Dr. Mouhtis report, and the Dr. Anthony report (D.E. No. 4-4 at 37-38; D.E. No. 4-5 at 12 & 28-29; D.E. No. 4-7 at 121), determined that Petitioner's guideline level for her crime was 35. (The guideline level of 37 was reduced by 2 points for acceptance of responsibility, resulting in a final level of 35.) (D.E. No. 4-7 at 121). With a criminal history category of I (0 criminal history points), the sentencing guideline range

was 168-210 months, which exceeded the statutory maximum of ten years. Thus, the statutory maximum became the recommended guideline range. (D.E. No. 4-9). At the sentencing hearing, Petitioner sought downward departure of her sentence based on extraordinary mental condition, and Mr. Willis made various arguments in support of mitigating the sentence. (D.E. No. 4-7 at 49, 93). Mr. Willis submitted the Jacoby reports and addressed the conflicting expert opinions about Petitioner's mental health. (D.E. No. 27 at 13; D.E. No. 4-7). In light of Dr. Anthony's report, the Government argued that Petitioner's claim of extraordinary mental condition was not factually sustainable. (*Id.*).

After "thinking about leniency in a very serious way," the Court denied any departure for extraordinary mental condition. (D.E. No. 4-7 at 129 ("[T]he victim had such an impact on [the Court] that [the Court] put [further leniency] out of [its] mind. [The Court] couldn't get beyond [the victim's statement]. She was powerful, her words were powerful")). The Court sentenced Petitioner to 120 months. (D.E. No. 4-7 at 127; D.E. No. 4-8; D.E. No. 4-9).

Upon Petitioner's appeal of her conviction, the United States Court of Appeals for the Third Circuit affirmed the judgment on March 18, 2015. *United States v. Faccenda*, 599 F. App'x 40 (3d Cir. 2015); *see also* (D.E. No. 4-10).

On March 15, 2016, Petitioner filed a motion pursuant to 28 U.S.C. § 2255, seeking to vacate, set aside, or correct her sentence. (D.E. No. 1).

Following Petitioner's April 19, 2016 Motion to Seal various documents, the Court ordered that various portions of the docket be sealed, including documents containing Petitioner's psychiatric/psychological history, the victim's personally identifying information, and confidential information of minors and persons not parties herein. (D.E. No. 18).

Petitioner thereafter submitted a redacted Motion to Vacate Sentence. (D.E. Nos. 21 ("Am. Motion") & 22-25). The Amended Motion raises one ground for relief: "Ineffective Assistance of Counsel at Sentencing." (Am. Motion at 4).

Respondent filed its Answer in opposition to the Amended Motion (D.E. No. 27), and Petitioner filed her Reply (D.E. No. 29).

## II. Discussion

### A. Legal Standard

A prisoner in federal custody under a federal sentence "may move the court which imposed the sentence to vacate, set aside or correct the sentence" upon the grounds that: (i) "the sentence was imposed in violation of the Constitution or laws of the United States"; (ii) "the court was without jurisdiction to impose such sentence"; or (iii) "the sentence was in excess of the maximum authorized by law." 28 U.S.C. § 2255(a). A court, in considering a § 2255 motion, must accept the truth of a movant's factual allegations unless they are frivolous on the basis of the existing record. *See United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005). A court may deny the motion without holding an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

### B. Analysis: Ineffective Assistance of Counsel

The Sixth Amendment[2] guarantees criminal defendants the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). To succeed on a claim of ineffective assistance of counsel ("IAC"), Petitioner must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).

---

[2] The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.

First, Petitioner must show that counsel's performance –viewed as of the time of counsel's conduct – was inadequate and "fell below an objective standard of reasonableness," in that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687-88. Under this first prong of the *Strickland* test, scrutiny of counsel's conduct must be "highly deferential." *See id*. at 689. Indeed, "[c]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. The reviewing court must make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. at 689.

Second, Petitioner must then show that the deficient performance prejudiced the defense. In other words, Petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 111-12 (2011) (internal quotation marks and citations omitted).

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). Because "[a]n ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial," the Supreme Court has admonished lower courts that "the *Strickland* standard must be applied with scrupulous care." *Harrington*, 562 U.S. at 105. "It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence." *Id.* (internal quotation marks omitted). However, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not

whether it deviated from best practices or most common custom." *Id.* (internal quotation marks omitted). As noted above, to pass the prejudice prong, Petitioner must show with reasonable probability that, but for his counsel's professional incompetence, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test." *Id.* at 693.

The well-established two-prong *Strickland* test requires satisfaction of both components for a claim that counsel's assistance was so defective as to require reversal of a conviction. Given that "failure to satisfy either prong defeats an ineffective assistance claim" and "it is preferable to avoid passing judgment on counsel's performance when possible, [*Strickland*, 466 U.S. at 697-98]," courts should address the prejudice prong first where it is dispositive of a petitioner's claims. *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002); *Judge v. United States*, 119 F. Supp. 3d 270, 280-81 (D.N.J. 2015). Thus, "[w]ith respect to the sequence of the two prongs, the *Strickland* Court held that 'a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies ... If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed.'" *Rainey*, 603 F.3d at 201 (Courts should decide ineffective assistance of counsel claims on *Strickland* prejudice grounds if it is possible to do so.) (quoting *Strickland*, 466 U.S. at 697).

In this case, Petitioner argues that Mr. Willis was constitutionally ineffective by failing to provide Dr. Jacoby with the Recordings prior to Dr. Jacoby's rendering of his expert opinion in mitigation of sentencing. (D.E. No. 1-1 at 27). Petitioner claims that, had Mr. Willis asked Dr. Jacoby to review the Recordings: (i) the Jacoby Diagnoses and Jacoby Opinion would have been

8

different and (ii) Dr. Jacoby instead would have arrived at another mental health diagnosis of Petitioner that would have supported mitigation arguments – to give Petitioner a sentence less than 120 months:

> Here, defense counsel's performance was deficient because he was wholly unprepared for sentencing and completely failed to ensure that Dr. Jacoby reviewed highly relevant materials. As a result, the multiple psychiatric reports that were submitted by defense counsel were utterly useless because they did not take into consideration critical information that was readily available.
>
> Defense counsel's responsibility did not cease upon the hiring of Dr. Jacoby. Rather, defense counsel was obligated to provide Dr. Jacoby with all relevant information and to ascertain that Dr. Jacoby had reviewed all materials necessary to conduct a proper evaluation.
>
> While defense counsel retained Dr. Jacoby to render an opinion regarding Ms. Faccenda's state of mind at the time of the offense, Dr. Jacoby never listened to or viewed the recordings documenting Ms. Faccenda's conduct and emotional state at the time of the crime. Instead, defense counsel submitted multiple reports by Dr. Jacoby that all contained the same defect, making them all patently worthless … Defense counsel's performance was clearly deficient.
>
> Had the Court been presented with an explanation of the correlation between Ms. Faccenda's [particular mental health condition] and her criminal conduct, there is a reasonable probability that the Court would have imposed a sentence below the maximum.

(D.E. No. 1-1 ("Supp. to Am. Motion") at 49-50; D.E. No. 1-2 ("Am. Motion's Mem. of Law") at 61).

Petitioner's claim can and will be decided on the merits at this time on the second prong of *Strickland* – i.e., whether Petitioner has made the requisite showing of prejudice to warrant granting habeas relief:

**Prejudice.** Petitioner has failed to demonstrate *Strickland*'s prejudice prong because she has not shown that "there is a reasonable probability that the result of the [case] would have been different absent the deficient act or omission." *Hinton v. Alabama*, 571 U.S. 263, 264 (2014) (per

9

curiam). Petitioner criticizes Mr. Willis for supposedly not providing the Recordings to Dr. Jacoby prior to sentencing, but nowhere in her § 2255 Motion to Vacate Sentence (D.E. Nos. 1 & 1-1) or supporting Memorandum of Law (D.E. No. 1-2) does Petitioner: (i) identify which specific contents of which particular Recordings would, to a reasonable probability, have led Dr. Jacoby to diagnose Petitioner with a different mental health condition (namely, the condition advanced in the March 4, 2016 report of Petitioner's expert, Dr. Alexander Sasha Bardey (D.E. No. 2-9)); or (ii) demonstrate that such different diagnosis by Dr. Jacoby would, to a reasonable probability, have led the Court to impose a sentence less than 120 months. A criminal defendant bears the affirmative burden of establishing her entitlement to relief on a habeas petition. *United States v. Davies*, 394 F.3d 182, 189 (3d Cir. 2005). But Petitioner here provides no evidence to substantiate the *Strickland* prejudice prong of her IAC claim: i.e., she has not identified with any specificity exactly which Recordings would have led Dr. Jacoby to a different mental health diagnosis that, in turn, would have convinced the Court to impose a lesser sentence.

In fact, the record suggests that Petitioner could *not*, in any event, make such showings.

First, Dr. Jacoby testified at the sentencing hearing only that the Recordings "might" have changed his opinion of Petitioner's emotional state at the time of the crime (had he personally listened to or viewed them), but he "doubt[ed]" it. (D.E. No. 3-8 at 37).

Second, Petitioner was charged with a single count of using a facility of interstate commerce in furtherance of murder-for-hire – a crime which had a sentencing guidelines range of 168 - 210 months. Had she been charged with all of the crimes she actually committed, she would have faced an advisory guidelines range of 210 - 262 months' imprisonment. The Court recognized the Government's charging leniency and stated that no further leniency for purported mental health conditions was appropriate, particularly in light of the victim impact statement

presented at sentencing. Petitioner's 120-month sentence was driven not by mental health considerations but rather by the nature of her crime and the fact she had already received leniency via prosecutorial discretion.[3] Thus, this Court is unable to imagine how Petitioner could show that a different mental health diagnosis by Dr. Jacoby would have further altered the sentence in Petitioner's favor. In short, even if Mr. Willis rendered deficient performance (an argument that this Court rejects, as discussed below), such ineffectiveness was not the cause of the sentence Petitioner received.[4]

Finally, Petitioner has not shown that the mental health condition she alleges Dr. Jacoby would have arrived at (had he listened to and/or seen the Recordings) is a condition that generally has an effect on criminal responsibility. (*See* D.E. No. 2-9 at 34-36 & 38) (Dr. Bardey's opinion is that the mental health condition Petitioner claims she had *can* theoretically diminish an individual's culpability, but Dr. Bardey does not state that the condition *actually* diminished Petitioner's capacity in this case.)).

---

[3] *See* D.E. No. 4-7 at 126-27 ("[This case is] tragic for the children in terms of personal attributes. [Petitioner's] children are suffering. [J.S.'s] children are suffering. And listening to [J.S.] had an enormous impact on me, frankly. And made me decide that leniency beyond what was already built into the charging decision should not occur. Further leniency I should say. And that's because [J.S.] has stated so eloquently, in a way that I didn't get just from reading the victim impact statement, but from listening to her, and watching her, and seeing her face, and realizing that she is going to spend her life, not even while [Petitioner] is in jail, [J.S.] and her children are not going to go home tonight and say, danger is not ever around me because of the ability to hire someone else to do it even from behind bars. So while I'm not finding that she in fact did that, they have that fear. And that fear is not going away. And is no way to grow up. And it is just tragic all around. And for those reasons, I am going to sentence at 120 months, which is the recommended sentence from the United States Probation Department, and is well below the advisory guideline range that would apply to a level 35.")).

[4] As courts have noted with respect to showing prejudice, "[w]hen a defendant would have been subject to the same guideline range notwithstanding counsel's alleged error, the defendant must demonstrate a reasonable probability that, in the absence of the error, the specific sentence would have been lower." *Zelaya v. United States*, No. 10-2509, 2013 WL 4495788, at *4 (D. Md. Aug. 20, 2013) (citing *Shaheed v. United States*, Civ. No. 07–1167, 2010 WL 3809854, at *6 (W.D. Pa. Sept. 22, 2010) (citing *United States v. Ivory*, No. 09–2376, 2010 WL 1816236, at *3 (D. Kan. Feb. 26, 2010); *Pena–Carrizoza v. United States*, No. 04-0475, 2006 WL 2992556, at *4 (D. Utah Oct. 17, 2006))). Here, notwithstanding Mr. Willis's performance as to the Recordings and Dr. Jacoby, Petitioner still would have been subject to the same 168 - 210 month guideline range for the crime of using a facility of interstate commerce in furtherance of murder-for-hire. This is because the applicable guideline range in this case was driven by the Government's leniency as to the offenses with which it charged Petitioner, and not by Petitioner's alleged mental health condition at the time she committed the crimes.

Thus, it is pure speculation on Petitioner's part that had Mr. Willis provided the Recordings to Dr. Jacoby: (i) Dr. Jacoby would have opined that Petitioner had a particular mental health condition at the time of her crimes that would have made her eligible for sentence reduction, and (ii) the Court in fact would have sentenced her to a reduced term below 120 months. Accordingly, Petitioner fails to make any showing whatsoever that any particular contents of any of the Recordings, had they been provided to Dr. Jacoby, would have resulted in a reduced sentence. Therefore, Petitioner fails to show that she was prejudiced. She has not shown to a reasonable probability that she would have received a lesser sentence had Mr. Willis provided the Recordings to Dr. Jacoby. For these reasons, this Court is clearly able to decide Petitioner's claim solely on the prejudice prong of the *Strickland* and an evidentiary hearing is not warranted. Petitioner is not entitled to relief because she fails to show that she was prejudiced.[5]

**Deficient Performance.** Having decided Petitioner's claim on the merits based on the second prong of *Strickland* as explained above, this Court declines to engage in an analysis on *Strickland*'s first prong of unconstitutionally deficient performance. However, this Court has noted during its review of Petitioner's allegations that the record flatly contradicts the factual core of Petitioner's claim: i.e., that Mr. Willis failed to provide the content of the Recordings to Dr. Jacoby. (D.E. No. 1-1 at 49-50; D.E. No. 1-2 at 61). Mr. Willis and Dr. Jacoby testified that the psychiatrist *was* provided with, among many other things (*see* D.E. No. 27 at 17-18), the substance

---

[5] Petitioner has also failed to show prejudice for another reason. "In determining prejudice, 'a court hearing an ineffective assistance of counsel claim must consider the totality of the evidence before the judge and jury.'" *United States v. Travillion*, 759 F.3d 281, 290 (3d Cir. 2014) (quoting *Strickland*, 466 U.S. at 695)); *see also Gooding v. Wynder,* 459 F. App'x 83, 86 (3d Cir. 2012) (finding that court must consider strength of the evidence of a petitioner's guilt in determining whether he was prejudiced due to counsel's purported ineffectiveness) (citing *Buehl v. Vaughn,* 166 F.3d 163, 172 (3d Cir. 1999)). The case against Petitioner was not a weak case, such that even if Mr. Willis should have provided the Recordings to Dr. Jacoby, Petitioner was not prejudiced.

of the Recordings. (D.E. No. 4-7 at 63[6]; D.E. No. 3-8 at 23[7]). Thus, unlike the facts of *Jacobs v. Horn*, 395 F.3d 92, 105 (3d Cir.), *cert. denied*, 546 U.S. 962 (2005), upon which Petitioner relies in her § 2255 Motion (D.E. No. 1-2 at 61, 66-67), Mr. Willis provided Dr. Jacoby with a host of material from which he could provide his expert opinion – including the substance of the Recordings. *Cf. Jacobs*, 395 F.3d at 122 (Trial counsel "fail[ed] to provide [the psychiatrist] with several highly relevant facts and other information necessary to conduct a proper evaluation."). Furthermore, this Court is not persuaded by Petitioner's suggestion that Mr. Willis should have specifically instructed which materials Dr. Jacoby needed to review and rely upon in rendering his opinions. *See, e.g.*, *Hendricks v. Calderon*, 70 F.3d 1032, 1038-39 (9th Cir. 1995).[8] Here, by contrast to the cases cited by Petitioner, Mr. Willis provided Dr. Jacoby with a host of material from which he could provide his expert opinion. In the face of the sizeable contents of what Dr. Jacoby reviewed in this case, it seems incredible to suggest that Mr. Willis rendered deficient performance by not providing background information to Dr. Jacoby. The record shows that he

---

[6] "THE COURT: 'What information did Dr. Jacoby have, Mr. Willis?' MR. WILLIS: 'He was provided transcripts that we were provided, Judge … He also was sent all of the tapes. I can't say he listened to every tape, but he had access to the tapes.'" (D.E. No. 4-7 at 63).

[7] "MR. WILLIS: 'And did you have an opportunity to review, at least excerpts of what was purported to be audio conversations that took place between Miss Faccenda and others?' DR. JACOBY: 'Yes, I did.' MR. FRAZER: 'You've read that [Complaint] document, including the allegations of what was on the videotape?' DR. JACOBY: 'Correct.' MR. FRAZER: 'What you're saying is, it wasn't the actual audio video, but perhaps transcripts of the audio / video?' DR. JACOBY: 'Whatever was alluded to in these documents.' MR. FRAZER: 'In that Complaint?' DR. JACOBY: 'Correct.'" (D.E. No. 3-8 at 23, 33-34)'

[8] "To now impose a duty on attorneys to acquire sufficient background material on which an expert can base reliable psychiatric conclusions, independent of any request for information from an expert, would defeat the whole aim of having experts participate in the investigation. An integral part of an expert's specialized skill at analyzing information is an understanding of what information is relevant to reaching a conclusion. Experts are valuable to an attorney's investigation, then, not only because they have special abilities to process the information gathered by the attorney, but because they also are able to guide the attorney's efforts toward collecting relevant evidence. To require an attorney, without interdisciplinary guidance, to provide a psychiatric expert with all information necessary to reach a mental health diagnosis demands that an attorney already be possessed of the skill and knowledge of the expert." *Hendricks*, 70 F.3d at 1038-39.

did provide such materials to Dr. Jacoby. Petitioner's *Strickland* performance argument – that counsel did not provide her expert with the Recordings – appears factually inaccurate.

## III. Certificate of Appealability

The Court will deny a certificate of appealability because Petitioner has not demonstrated "a substantial showing of the denial of a constitutional right" as required under 28 U.S.C. § 2253(c)(2). *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

## IV. CONCLUSION

Without any showing of (i) which specific Recordings Petitioner contends Mr. Willis should have provided to Dr. Jacoby, that were not so in fact provided, (ii) how those Recordings would have altered Dr. Jacoby's opinions of Petitioner's mental state at the time she committed the crimes, and (ii) how a different diagnosis by Dr. Jacoby would have changed Petitioner's sentence to a term less than 120 months, there is no evidence to show that Mr. Willis' performance affected the outcome of the case. Petitioner would have to make all three of these showings to merit relief. Petitioner's claim, in short, is based on pure speculation, made in the face of affirmative evidence that Mr. Willis did provide the substance of the Recordings to Dr. Jacoby. The Court denies relief on the claim in Ground One of Petitioner's § 2255 Motion.

For the foregoing reasons, the Court will deny the Motion to Vacate Sentence (D.E. No. 1) and decline to issue a certificate of appealability. An appropriate order follows.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**